IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. JFM 07-320 |
| VONAGE AMERICA INC., | * | |
| Defendant. | * | |

*****

**OPINION**

In an opinion I issued on April 16, 2008, I concluded that, except as to calls between Vonage America Inc. ("Vonage") subscribers, Vonage "leases, licenses, or sells a telecommunications line" within the meaning of Baltimore City Code, Art. 28, § 25-2. *Mayor & City Council of Baltimore v. Vonage Am. Inc.*, 544 F. Supp. 2d 458, 473 (D. Md. 2008). Thus, I found that Vonage is and has been subject to Baltimore City's Telecommunications Tax. *Id.* Vonage has moved for reconsideration and to alter or amend my opinion and order pursuant to Federal Rule of Civil Procedure 59(e).[1] (Def.'s Mot. for Recons. at 1.) Vonage argues that "[a]s applied, the Telecommunications Tax violates the Commerce Clause requirements that the activity taxed must have a substantial nexus with the taxing locale and that the tax be fairly apportioned."[2] (Def.'s Mem. at 4.) For the reasons that follow, I will deny Vonage's motion.

---

[1] Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

[2] The Commerce Clause provides that "Congress shall have the power . . . to regulate commerce . . . among the several States . . . ." U.S. Const. Art. I, § 8, cl. 3. "Even where Congress has not acted affirmatively to protect interstate commerce, the Clause prevents States from discriminating against that commerce." *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 29 (1988).

I.

Federal Rule of Civil Procedure 59(e) permits a court to amend a judgment within ten days on three grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *E.E.O.C. v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th 1997)). In the instant case, Vonage relies on the third ground, submitting that "an erroneous understanding occurred here with respect to the relevance of the nature and location of the telecommunications lines that the Court ruled Vonage leases, licenses or sells to its customers to the constitutionality of the Telecommunications Tax." (Def.'s Mem. at 3.) Further, Vonage implies that injustice will result if my earlier judgment is not amended because "the reach of the Tax has significant Commerce Clause ramifications not merely historically, but prospectively as well . . . ." (Def.'s Reply at 6.)

Plaintiff contends that it is inappropriate for me to consider the issue of whether the Telecommunications Tax violates the Commerce Clause because Vonage had "ample opportunities" to raise the issue in earlier briefing. (Pl.'s Opp'n at 2-5 (citing *Pac. Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.")).) I am not persuaded by this argument. The Fourth Circuit has made clear that it is proper for a district court to grant a Rule 59(e) motion where "manifest injustice would [be] the result of allowing a ruling based on an erroneous and inadequate record to stand." *Lockheed Martin*, 116 F.3d at 112 (internal

quotation marks and citation omitted).  In the instant case, manifest injustice would result if Vonage were subjected to the Telecommunications Tax in violation of the Constitution.  Accordingly, I turn now to consider the substantive issue before me.

II.

A state tax will withstand scrutiny under the Commerce Clause if "the tax is [1] applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State."[3]  *Goldberg v. Sweet*, 488 U.S. 252, 258 (1989) (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)).  Because Vonage contends that the Telecommunications Tax fails only the first two prongs of the *Complete Auto* test, I will analyze those two in turn.

A.

Vonage argues that the Telecommunications Tax fails the "substantial nexus" prong of the *Complete Auto* test because "the only connection that the City necessarily has to the economic activity covered by the tax (i.e. the lease, license or sale of a telecommunications line) is that *the customer has a billing address within the City*."  (Def.'s Mem. at 9 (emphasis in original).)  Because it offers "nomadic" Voice over Internet Protocol ("VoIP"), Vonage submits that its customers do not have fixed service addresses, but instead can place and receive calls "anywhere a broadband connection to the internet is available." (*Id.* at 5.)  Thus, as the City concedes, calls made or received by customers with a Baltimore billing address do not

---

[3] As an initial matter, it is clear that the activity taxed in the instant case - Vonage's leasing, licensing, or selling of a telecommunications line - is interstate in nature.  Because Vonage's gateways, through which every inbound and outbound call between a Vonage and non-Vonage user must pass, are all located outside of Maryland, every call to which I held the Telecommunications Tax applies must travel interstate.  *See Vonage Am. Inc.,* 544 F. Supp. 2d at 462-63 n.7,9.

necessarily originate or terminate in Baltimore.  (*Id.*; Pl.'s Opp'n at 8.)  Vonage contends that relying solely upon a billing address to establish a nexus between the taxed activity and the taxing state falls short of the "substantial nexus" requirement set forth in *Goldberg*.  (*Id.* at 8-11.)  In *Goldberg*, a case involving *wired* telecommunications, the Supreme Court held "that only two States have a nexus substantial enough to tax a consumer's purchase of an interstate telephone call": (1) a state "which taxes the origination or termination of an interstate telephone call charged to a service address within that State," and (2) a state "which taxes the origination or termination of an interstate telephone call billed or paid within that State."[4]  488 U.S. at 263.

Although I recognize that a tax that relies solely upon a Vonage customer's billing address would fall short of *Goldberg*'s nexus requirement, I conclude that the *Goldberg* test does not apply to the instant case.  In *Goldberg*, the Court upheld the constitutionality of the Illinois Telecommunications Excise Tax Act, which imposed a 5% tax on the gross charge of wired interstate telecommunications that (1) originated or terminated in Illinois, and (2) were charged to an Illinois service address, regardless of where the telephone call was billed or paid.  488 U.S. at 255-56.  Here, Vonage concedes that the Federal Communications Commission ("FCC") has ruled that it is not feasible to determine where a call from a Vonage customer originates or where a call to a Vonage customer terminates.  (Def.'s Mem. at 5 (citing *In the Matter of Vonage Holdings Corp.*, 19 F.C.C.R. 22404, ¶¶ 23-27 (2004), *aff'd, Minn. Pub. Utils. Comm'n v. FCC*, 483 F.3d 570, 578-79 (8th Cir. 2007)).)  Accordingly, under the *Goldberg* test, no state or local government would be permitted to tax Vonage for the sale of its telecommunications services.  I

---

[4] Further, the Court "doubt[ed]" that states through which a telephone call's electronic signals "merely pass" or states in which an interstate telephone call merely terminates have a sufficient nexus to tax that call. *Goldberg*, 488 U.S. at 263.

do not believe that the Supreme Court intended the nexus requirements it set forth in *Goldberg* to apply to a technology, such as Vonage's nomadic VoIP, that differs so extensively from the wired telecommunications it considered in 1989.

To the contrary, I conclude that, in the context of Vonage's nomadic VoIP, the presence of a billing address in the taxing locality is sufficient to constitute a "substantial nexus." Because a nomadic VoIP customer does not have a fixed service address, and it cannot be determined where a call from a Vonage customer originates or where a call to a Vonage customer terminates, a Vonage customer's billing address is the only nexus of the four considered in *Goldberg* that connects Vonage with any state in which it does business.[5] Although being the only nexus does not necessarily make it "substantial," a billing address indicates a significant commercial connection with a locality.[6] Further, there is no evidence in the record supporting Vonage's contention that a customer's billing address might "merely represent[] a rented post-office box or a mail-forwarding service." (Def.'s Mem. at 9). Rather, I find it likely that a customer chooses a Baltimore billing address for reasons directly related to

---

[5] As discussed *infra*, Vonage raises the possibility that states in which Vonage's "call switching equipment" (which presumably consists of Vonage's gateways and proxy servers) is located would have a sufficient nexus with Vonage's provision of a telecommunications line to tax this activity. (Def.'s Mem. at 14.) There is, however, nothing in the record to suggest that such a nexus has been relied on by any state in taxing telecommunications activity or contemplated by any prior case law. Therefore, the customer's billing address is the only nexus that currently exists between Vonage's provision of a telecommunications line and the states in which it offers this service.

[6] As Vonage points out, the FCC has found that while Vonage uses wireline telecommunications lines when facilitating its customers' communications with users of the Public Switched Telephone Network ("PSTN"), its service is more akin to wireless service than to fixed wireline service. (Def.'s Mem. at 13 n.4 (citing *In the Matter of Vonage Holdings Corp.*, 19 F.C.C.R. 22404 ¶ 22).) One of the respects in which this is true is that wireless service (which is taxed under the Telecommunications Tax if the wireless customer's "place of primary use is in the City" (Baltimore City Code, Art. 28, § 25-2(2))) and Vonage's nomadic VoIP (which is taxed under the Telecommunications Tax if the VoIP customer's "billing address . . . is in the City" (Baltimore City Code, Art. 28, § 25-2(1))), both rely on only one nexus between the taxed activity and the taxing locality because of their unique technologies.

the commercial benefit or convenience it provides. At its core, the "substantial nexus" requirement is "a means for limiting state burdens on interstate commerce." *Quill Corp. v. North Dakota*, 504 U.S. 298, 313 (1992). The City's taxation of a transaction billed to a Baltimore address - where the billing address is the only currently recognized nexus that Vonage has with any locality - does not burden interstate commerce.[7]

B.

The "central purpose" behind the second prong of the *Complete Auto* test - the apportionment requirement - is "to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg*, 488 U.S. at 260-61. In order for a tax to be fairly apportioned, it must be externally consistent.[8] *Id.* at 261. To be externally consistent, a tax must apply "only [to] that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.* at 262. To determine whether a tax is externally consistent, a court must "examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity." *Id.* Further, the Court has made clear that "the threat of real multiple taxation . . . may indicate a State's impermissible

---

[7] Vonage also contends that, by relying "merely" on the customer's billing address as a nexus, the Telecommunications Tax "expands the taxing jurisdiction of the City nationally, and perhaps even internationally, to transactions that have no practical, technical, or economic relationship to the City . . . ." (Def.'s Mem. at 9.) This argument fails, however, because Vonage misunderstands what is the taxed transaction. Vonage emphasizes the fact that the physical location of the telecommunications line being provided might not be in Baltimore, thereby implying that the taxed transaction is unrelated to the City. (*Id.* ("[T]he City is purporting to tax the [provision] of a telecommunications line without regard to whether that line is located in Baltimore City, is required to be used in Baltimore City or ever is used in Baltimore City.").) I find, however, that the taxed transaction is a customer's agreement to purchase Vonage's service with a Baltimore City billing address, because it is this agreement that enables the provision of the telecommunications line in the first place. Accordingly, the Telecommunications Tax does not expand the taxing jurisdiction to transactions that have no relationship with the City.

[8] To be "fairly apportioned," a tax must also be internally consistent, i.e. "be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261. Vonage does not challenge the Telecommunications Tax under the internal consistency test. (*See* Def.'s Reply at 12.)

overreaching." *Ok. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 185 (1995).

Vonage argues that the Telecommunications Tax fails the external consistency test because Vonage is "exposed to a significant risk of multiple state taxes on the same long distance telecommunications lines in violation of the apportionment principle." (Def.'s Mem. at 11.) Vonage contends that other jurisdictions "with far greater connections to the customers and the telecommunications lines at issue" are also likely to impose taxes on Vonage. (*Id.* at 14.) Vonage submits, for example, that a different state could tax Vonage for the same transaction if the customer's service address (as opposed to the billing address) was within that state, or if the equipment "actually switching calls" - presumably one of Vonage's proxy servers or gateways - was located there. (*Id.*)  According to Vonage, the imposition of a tax by that other state (which Vonage alleges would be constitutional because the state "would have a substantial nexus with the transaction being taxed") would result in double taxation in violation of the second prong of the *Complete Auto* test. (*Id.* at 14-15.)

Contrary to Vonage's contention, I find the Telecommunications Tax does not violate *Complete Auto*'s apportionment requirement because there is no threat of real multiple taxation. First, there is no real threat of double taxation as a result of a customer's billing address and fixed service address being in separate states because, as Vonage itself concedes, a Vonage customer does not have a fixed service address. (*See id.* at 5; Martinez Dep. at 13:13 - 14:8.) Second, there is no evidence that any of the states in which Vonage's proxy servers or gateways[9]

---

[9] Vonage's outbound and inbound proxy servers are located in California, New Jersey, New York, and Virginia. (*See* Martinez Dep. at 112:6-10; 118:7-10). Vonage's outbound gateways are located in California, New York, and Virginia, while its inbound gateways "are located throughout the U.S. in different RDCs [Regional Data Centers]." (*See* Martinez Dep. at 114:20-22; 116:17-22.)

are located have taxed or will tax Vonage for the same transaction that the City taxes it.[10]

Even if there is a possibility that these other states might tax Vonage for the same transaction, the Supreme Court has made clear that the "limited possibility of multiple taxation" is not sufficient to invalidate a state tax. *Goldberg*, 488 U.S. at 263-64. The Court has explained that "[t]he Constitution does not 'invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State." *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 169-70 (1983) (emphasis in original) (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272 (1978)). Rather, for a court to strike down the application of an apportionment formula, a taxpayer must prove "by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted in that State." *Id.* at 170 (internal citation omitted). I conclude that the $3.50 per month Telecommunications Tax on "each person who [provides] a telecommunications line to any customer for wired service, whose billing address . . . is in the City," Baltimore City Code, Art. 28, § 25-2, is certainly not "out of all appropriate proportions to the business transacted" in Baltimore.[11] *Container Corp.*, 463 U.S. at 170.

Vonage also contends that the Telecommunications Tax as applied to Vonage is not fairly apportioned because it lacks a "credit provision" to avoid multi-state taxation. (Def.'s Mem. at

---

[10] Although Vonage does not directly raise the issue, it is worthy of note that it is also extremely unlikely, if not impossible, that the state in which a Vonage customer uses his terminal adapter ("TA") routing device to make or receive a call would tax the use of this device.

[11] Furthermore, in *Goldberg*, the Court held "that the external consistency test is essentially a practical inquiry. . . . An apportionment formula based on mileage or some other geographic division of individual telephone calls would produce insurmountable and technological barriers. We thus find it significant that Illinois' method of taxation is a realistic legislative solution to the technology of the present-day telecommunications industry." 488 U.S. at 264-65. Likewise, in the instant case, I find that the flat $3.50 per month tax is a reasonable method of taxation of nomadic VoIP, where customers have no fixed service address and the origination and termination of calls from and to Vonage customers, respectively, are indeterminable.

12-13.)  In *Goldberg*, the Court noted that "[t]o the extent that other States' telecommunications taxes pose a risk of multiple taxation, the credit provision contained in the [Illinois] Tax Act operates to avoid actual multiple taxation."  488 U.S. at 264.  The Court did not, however, create a requirement that a tax contain a credit provision to be fairly apportioned.  Indeed, as mentioned above, the Court explicitly held that the "limited possibility of multiple taxation . . . is not sufficient to invalidate the Illinois statutory scheme."  *Id.* at 263-64.  Moreover, in the instant case, the hypothetical possibility that other states will tax Vonage's call switching equipment strikes me as considerably more limited than the real concern in *Goldberg* that states would rely on the traditional nexuses of the customer's service address and billing address to subject the taxpayer to multiple taxation for the same phone call.  In any event, if any of the states in which Vonage's proxy servers or gateways are located enacts a tax on Vonage's service and fails to enact a credit provision, Vonage would then have the opportunity to take up the issue of whether multiple taxation based on those less traditional nexuses violates the apportionment requirement of the *Complete Auto* test.

For the foregoing reasons, I deny Vonage's motion for reconsideration and to alter or amend my April 16, 2008 opinion and order.  A separate order to that effect is being entered herewith.


Date:   July 24, 2008                              /s/
                                                   J. Frederick Motz
                                                   United States District Judge